## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

NYDEED NASHADDAI,

      Plaintiff,

vs.                          Case No. 4:13cv421-MW/CAS

A.L. JOHNSON, RONALD N. MOCK,
TERRY L. WHITLOCK,
and other UNKNOWN OFFICERS,

      Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION[1]

After the motion to dismiss filed by Defendant Sergeant Ronald N. Mock, ECF No. 62, was granted, *see* ECF Nos. 71-72, this case continued against Defendant Mock in his individual capacity only, and limited to nominal damages only.  The parties were provided an opportunity to conduct discovery, ECF No. 74, and at the conclusion of discovery, Defendant Mock filed a motion for summary judgment.  ECF No. 82.  The pro se Plaintiff was directed to respond to that motion, ECF No. 85, and

---

[1] The first Report and Recommendation, ECF No. 71, was entered on December 1, 2016, and recommended granting Defendant Mock's motion to dismiss, ECF No. 62.

Plaintiff was provided several extensions of time in which to comply. ECF

Nos. 87, 89, 91, and 98.  Plaintiff filed a response, ECF No. 99, and

statement of disputed factual issues, ECF No. 100, and Defendant Mock

filed a reply, ECF No. 101.  The summary judgment motion is ready for a

ruling.

**Procedural Issue**

Service of process was only carried out on Defendant Mock.  *See*

ECF No. 70.  Plaintiff was advised "that after issuance of an Initial

Scheduling Order," he could "use the tools of discovery to seek to locate

Defendants Johnson and Whitlock."  ECF No. 70 at 2.  Plaintiff had also

been advised that he must use discovery to identify the "unknown

Defendants listed in the complaint."  ECF No. 44 at 2.  He was informed

that it was his responsibility to file a motion requesting service be carried

out on those Defendants, once identified and located.  ECF Nos. 44, 59,

63, 70, and 74.

On April 28, 2017, Plaintiff was required to show good cause no later

than May 23, 2017, as to why those claims should not be dismissed.  ECF

No. 77 at 2.  Plaintiff did not respond to that Order, and his request for a

continuance as to his claims against those Defendants as presented within

his response to the summary judgment motion, *see* ECF No. 99 at 2, comes too late.  Because no less than six Orders advised Plaintiff of his obligation to prosecute his claims against those Defendants and he failed to do so, the fourth amended complaint should now be dismissed as to Defendants Johnson, Whitlock, and all other unknown correctional officer Defendants.

**Allegations of the Fourth Amendment Complaint**

The events at issue took place in the summer of 2011 while Plaintiff was housed in the disciplinary confinement unit at Franklin Correctional Institution.  ECF No. 41 at 7.  On June 26, 2011, Officers Johnson and Whitlock allegedly began harassing Plaintiff.  *Id.* at 9.  When Sergeant Mock came to Plaintiff's cell a few minutes later and asked him what the problem was, Plaintiff said that the officers were harassing him.  *Id.* Sergeant Mock told Plaintiff to "just sit down on [his] bunk and calm down," and he walked away.  *Id.* at 9-10.

A short time later, Captain Johnson threatened Plaintiff with chemical agents by Captain Johnson if hd did not "cease [his] disruptive behavior." *Id.* at 10.  Plaintiff said he had done nothing wrong, but reported that he was "hearing voices inside [his] head" and said people were "plotting and

trying to kill" him. *Id.* Plaintiff requested help and declared a psychological emergency, but he Captain Johnson ignored him. *Id.* Approximately ten minutes later, Captain Johnson, Officer Whitlock and an unknown correctional officer came to Plaintiff's cell and sprayed him with chemical agents. *Id.* Plaintiff states that "at no time" before or after that use of force was he being disruptive, disorderly, or kicking on the cell door. *Id.* Less than two minutes later, Captain Johnson, Officer Whitlock, and the unknown officer returned to Plaintiff's cell and again sprayed him with chemical agents. *Id.* A short time later Plaintiff was escorted to a shower and to be examined by a nurse. *Id.*

The next day, Captain Johnson and an unknown correctional officer came to Plaintiff's cell and asked if Plaintiff if he was going to cause any more problems. ECF No. 41 at 11. Plaintiff alleges that he said "no" because he was terrified, but he also asked if he could have his clothes back and a mattress. *Id.* Captain Johnson told Plaintiff he was not entitled to those privileges and threatened to use more tools from his "tool box" if he heard "a word out of" Plaintiff. *Id.*

Plaintiff was kept on property restriction for two days, and on June 30, 2011, he was served with two disciplinary reports. *Id.* at 11. One

report was issued by Officer Whitlock for disobeying an order and the second report was issued by Defendant Mock for participating in a disturbance. *Id.* Plaintiff contends that both disciplinary reports were issued "to cover up the excessive force." *Id.*

Plaintiff did not make any statements to challenge the disciplinary reports and did not attend any hearings. *Id.* at 12. He alleges that he told the investigating officer that the officers had falsified the disciplinary reports and he was scared for his life. *Id.* Plaintiff does not allege, however, that he requested protective custody. Plaintiff was directed to "sign some documents," which he did, and the officer left his cell. *Id.* Plaintiff was "found guilty" of the disciplinary reports as charged in absentia, and he was sentenced to 30 days in disciplinary confinement, but did not lose gain time. *Id.* Plaintiff's appeals were denied. *Id.*

Plaintiff alleges that the Defendants violated his "due process rights" to a "fair and impartial disciplinary hearing" and that his Eighth Amendment rights were violated "by stripping Plaintiff of clothes, property and basic living necessity [sic], and then spraying Plaintiff with chemical agent[s] repeatedly for no cause." *Id.* at 13. As relief, Plaintiff seeks a declaratory judgment, an injunction to expunge the disciplinary reports, compensatory

and punitive damages, and costs for this litigation. *Id.* at 13-14. His request for compensatory and punitive damages have already been dismissed pursuant to 42 U.S.C. § 1997d(e), and his request for injunctive and declaratory relief were dismissed as moot because he is no longer at Franklin Correctional Institution. *See* ECF Nos. 71-72. The surviving claim against Defendant Mock proceeds against him in his individual capacity only for nominal damages. *Id.*

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; <u>Beard v. Banks</u>, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The Relevant Rule 56(e) Evidence**

Plaintiff provided a declaration in opposition to Defendant's summary judgment motion in which he asserts that Defendant Mock "knowingly" submitted and falsified "a fraudulent disciplinary report" against him.  ECF No. 99-2 at 1.  Plaintiff states that Defendant Mock's disciplinary report was an "exact duplicate of" Officer Whitlock's disciplinary report.  *Id.* at 1-2, 5. As relevant to the surviving claim against Defendant Mock, Plaintiff declared that on June 25, 2011, Officer Whitlock was harassing him and

---

[3]  Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

yelled obscenities at him.  *Id.* at 4.  Officer Whitlock told Plaintiff that if he saw Plaintiff standing at the cell door again, he would have something for him.  *Id.*  An hour later, Officer Whitlock told Plaintiff to get away from the rear cell window.  *Id.*  When Plaintiff did not respond or comply, Officer Whitlock said he would be back in 30 minutes to "gas [Plaintiff's] ass."  *Id.*

A few minutes later, Defendant Mock came to Plaintiff's cell door and asked Plaintiff: "what's the problem?"  *Id.*  Plaintiff said that "Officers Whitlock and Johnson [had] been harassing and threaten[ing]" him all morning.  *Id.*  Plaintiff said he requested that, as their supervisor, Defendant Mock tell them to leave him alone.  *Id.*

Shortly after Defendant Mock left his cell, Captain Johnson, Officer Whitlock, and another "unknown officer" came to his cell door with a "video camcorder and chemical agent extinguisher."  *Id.* at 4-5.  Plaintiff declared a psychological emergency and said he had not done anything wrong.  *Id.* at 5.  However, without warning, Defendant Whitlock repeatedly sprayed him with chemical agents on the approval of Captain Johnson.  *Id.*  Plaintiff

declared that Defendant Mock was "in the control room observing the whole incident."  *Id.*[4]

In his deposition, Plaintiff testified that Defendant Mock's only involvement was when Plaintiff spoke to him and complained that officers were harassing him, and for issuing him a disciplinary report.  ECF No. 82, E. B, pgs. 10-12 (ECF No. 82-2 at 2-4).  There is no evidence that Defendant Mock was involved in using chemical agents on Plaintiff.

Defendant Mock submitted several items of evidence in support of his summary judgment motion.  The disciplinary report written by Defendant Mock was issued on June 25, 2011, approved by A.L. Johnson, and charged Plaintiff with participating in a disturbance.  ECF No. 82 at 5 (citing Ex. A, pg. 1 [ECF No. 82-1 at 1]).[5]  The "statement of facts" charged that Plaintiff was yelling obscenities at staff from his cell and was "gaining the attention of other inmates in the confinement unit."  Ex. A, pg. 1 (ECF No.

---

[4]  It is unclear how Plaintiff has knowledge of where Defendant Mock was located or what he was observing, but Plaintiff's declaration is accepted for the limited purpose of demonstrating that Defendant Mock was not present and did not participate in the use of chemical agents.

[5]  This Report and Recommendation cites to both the "hard copy" of the referenced exhibit (Ex. A, pg. 1) as well as to the electronic version of the document (ECF No. 82-1 at 1) because Plaintiff is a pro se prisoner and does not have access to the Court's electronic docket.

82-1 at 1).  Defendant Mock said that he attempted to counsel with Plaintiff and "ordered him to cease his disorderly conduct," but Plaintiff "would not comply."  *Id.*  Plaintiff "continued to yell obscenities toward staff, disrupting the normal operations of the confinement unit."  *Id.*

Officer Crosby was the investigating officer and served Plaintiff with a copy of the disciplinary report on June 30, 2011.  *Id.*  Plaintiff was offered staff assistance, but declined it.  ECF No. 82 at 5; *see also* Ex. A, pg. 7 (ECF No. 82-1 at 7).  Plaintiff was offered an opportunity to make a statement, but Plaintiff declined to give either an oral or written statement.  *Id.* at 7-9.  Plaintiff did not request any witness statements be obtained, said he did not have any evidence to present, and he waived his right to be present at the disciplinary hearing.  *Id.* at 8-9, 11, and 13.  The hearing was held on July 5, 2011, and Plaintiff refused to appear.  *Id.* at 3.  He was found guilty based on Defendant Mock's statement of facts, and the disciplinary team (who are not named Defendants) sentenced Plaintiff to 30 days in disciplinary confinement.  *Id.*

Plaintiff filed a formal grievance challenging that disciplinary report.  Ex. A, pg. 14 (ECF No. 82-1 at 14).  His grievance was denied, with the response noting that Plaintiff refused to attend the hearing, refused to

make a statement, called no witnesses, and "did not request the camera or call for any evidence to be presented during the hearing . . . ."  *Id.* at 15. Plaintiff filed a grievance appeal, which was also denied.  *Id.* at 16-17.

Additionally, a copy of the disciplinary report written by Officer Whitlock was also submitted.  Ex. A at 18-19.  Although Defendant Mock was not involved in that disciplinary report, the statement of facts makes clear that the events are related.  Officer Whitlock stated that Plaintiff was yelling obscenities at staff and Officer Whitlock attempted to counsel with Plaintiff and "ordered him to cease his disorderly conduct."  *Id.* at 18.  The report states that Plaintiff did not comply with Officer Whitlock's command. *Id.*  The events are intertwined, but separate in that Plaintiff refused to comply with Officer Whitlock's command (the basis for DR log # 113-110700), and also refused to comply with Defendant Mock's command and continued creating a disturbance (the basis for DR log # 113-110701).

Once again, the record evidence shows that Plaintiff refused to appear at the disciplinary hearing.  *Id.* at 20.  Plaintiff was found guilty based on Officer Whitlock's statement and the disciplinary team sentenced Plaintiff to 30 days in disciplinary confinement.  *Id.*  Plaintiff filed a formal grievance concerning Officer Whitlock's disciplinary report, and it was

denied.  *Id.* at 21-22.  Plaintiff filed a grievance appeal which was also

denied.  *Id.* at 23-24.

**Analysis**

**a.    Eighth Amendment Claim**

The Eighth Amendment[6] governs the conditions under which

convicted prisoners are confined and the treatment they receive while in

prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994).  Although the Amendment does not require

comfortable prisons, it prohibits inhumane ones.  *Id.*  The Eighth

Amendment guarantees that prisoners will not be "deprive[d] ... of the

minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452

U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in

Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic

human necessities include food, clothing, shelter, sanitation, medical care,

and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir.

1991) (cited in Collins v. Homestead Corr.l Inst., 452 F.App'x 848, 850-851

---

[6] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation."  Thomas v. Bryant, 614 F.3d 1288, 1303-04 (11th Cir. 2010).  This case raises both a claim to the conditions of confinement and an excessive force claim, but not a deliberate indifference to medical needs claim.

(11th Cir. 2011)).  "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required . . . ."  Thomas v. Bryant  614 F.3d 1288, 1304, 1306-07 (11th Cir. 2010) (concluding that non-spontaneous use of chemical agents on inmates with mental illness violated the Eighth Amendment) (citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).  In this case, Plaintiff has not provided any evidence which demonstrates that he suffered "extreme deprivations."  More importantly, there is no evidence that provides a causal connection between Defendant Mock and the deprivation of Plaintiff's property or the use of chemical agents.  Plaintiff acknowledges as much.  See ECF No. 99 at 8 (stating that he has "not alleged that Defendant Mock was involved in taking his personal property or placing him in disciplinary confinement which he was already on disciplinary confinement.").  Summary judgment should be granted in favor of Defendant Mock on this claim.

**b.    Due Process Claim**

Defendant Mock requests that summary judgment be entered in his favor as to this claim as well because Plaintiff was found guilty of the disciplinary reports which he received concerning these events.  ECF No.

82 at 14.  Defendant Mock points to O'Bryant v. Finch and contends that

Plaintiff was provided due process which bars his claim.  *Id.* at 14-16.

Moreover, Defendant Mock notes that Plaintiff's due process claim is not

cognizable in this case because he did not lose gain time and did not suffer

an "atypical and significant hardship" under Sandin v. Conner.  *Id.* at 16-17.

The Due Process Clause of the Fourteenth Amendment prohibits

state action that deprives "any person of life, liberty, or property, without

due process of law."  U.S. CONST. amend. XIV.  While prisoners may "claim

the protections of the Due Process Clause," Wolff v. McDonnell, 418 U.S.

539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974),[7] due process does

not exist in a vacuum.  Due process exists to protect a liberty interest.

In Sandin v. Conner, 515 U.S. 472, 484-86, 115 S.Ct. 2293, 2300

(1995), the Supreme Court established that "a convicted inmate is entitled

to procedural due process in two circumstances."  Jacoby v. Baldwin Cty.,

835 F.3d 1338, 1347 (11th Cir. 2016) (explaining Sandin).  First, an inmate

is entitled to the due process protection outlined in Wolff v. McDonnell if he

---

[7] Wolff v. McDonnell held that before an inmate could lose good-time credits, the Due Process Clause requires prisoners be given advance written notice of a charged disciplinary violation, a written statement of factual findings, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.

can show the deprivation of a "protected liberty interest." The forfeiture of gain time is such a protected liberty interest as that alters a prisoner's term of imprisonment. Smith v. Deemer, 641 F. App'x 865, 867 (11th Cir. 2016) (stating that "[a] hallmark example of action that unexpectedly alters an inmate's term of imprisonment is the revocation of good-time credit."). Here, however, Plaintiff did not lose any gain time as a result of the disciplinary reports. Rather, Plaintiff was only sentenced to time in disciplinary confinement.

The second way a prisoner "is entitled to a measure of procedural due process [is] when a change in his conditions of confinement 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Jacoby, 835 F.3d at 1347 (quoting Sandin, 515 U.S. at 487, 115 S. Ct. at 2302). Sandin "held that placing a convicted inmate in segregated confinement for thirty days as discipline was not 'a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence' of thirty years to life in prison." Id. at 485, 115 S.Ct. at 2301 (quoted in Jacoby, 835 F.3d at 1347). Thus, requiring an inmate to serve thirty days in disciplinary confinement did not give rise to a protected liberty interest because "[d]iscipline by prison officials in

response to a wide range of misconduct falls within the expected

perimeters of the sentence imposed by a court of law."  Sandin, 515 U.S. at

485, 115 S.Ct. at 2301; Jacoby, 835 F.3d at 1347.  "Said another way,

convicted inmates have no right to a due process hearing before being

punished for disciplinary infractions unless the punishment is demonstrably

harsher than the ordinary conditions of prison life.  This is because these

inmates are already subject to punishment on account of their convictions

and sentences."  835 F.3d at 1347.  Plaintiff has not come forward with any

evidence to demonstrate that the discipline he received was a drastic

departure from the conditions of his incarceration.  Indeed, it has been

recognized that Florida permits the forfeiture of "up to 60 days of good-time

credit for 'disorderly conduct,'" one of the charges in Plaintiff's disciplinary

reports.  Smith, 641 F. App'x at 867 (11th Cir. 2016) (citing Fla. Admin.

Code R. 33-601.314, 9-17 (2015)).  Plaintiff's punishment was not "severe

enough nor of such duration as to constitute violations of a protected liberty

interest."  641 F. App'x at 868; *see also* Rodgers v. Singletary, 142 F.3d

1252, 1253 (11th Cir. 1998)(finding that an inmate was not deprived of a

constitutionally protected liberty interest when he was sentenced to 60

days in administrative confinement as result of an allegedly false

disciplinary report).  Accordingly, Plaintiff's due process claim is insufficient to bring in the protections of the Due Process Clause and summary judgment should be granted in favor of the Defendant as to this claim.

As an additional matter, Plaintiff's claim that he was issued a false disciplinary report cannot survive summary judgment because he was found guilty of the rule violation as charged in a subsequent disciplinary hearing.  If Plaintiff were issued a retaliatory disciplinary report because he had exercised his right of free speech, it would be a valid First Amendment claim.  *See* Malloy v. Peters, 617 F. App'x 948, 950 (11th Cir. 2015); O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011); Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).  However, Plaintiff has not provided any evidence which demonstrates a connection between the disciplinary reports and Plaintiff's having previously exercised his First Amendment rights.[8]

Moreover, "[a]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was

---

[8] To the degree Plaintiff *alleged* that he was initially placed in confinement because he has been classified as "a writ writer," *see* ECF No. 99 at 3-4, and ECF No. 41 at 7, that action was not taken by Defendant Mock.  Moreover, Plaintiff provided no evidence which links Defendant Mock's issuance of the disciplinary report to Plaintiff's filing of grievances.

found guilty of the actual behavior underlying that charge after being

afforded adequate due process." Malloy, 617 F. App'x at 950 (holding that

prisoner could not state a retaliation claim "because he was found guilty of

the behavior underlying both disciplinary charges and was afforded

adequate due process at the disciplinary hearing.") (citing O'Bryant, 637

F.3d at 1215)).  In other words, there is no causal connection between a

disciplinary report and a prisoner's freedom of speech if the disciplinary

action would have been taken regardless of the prisoner's protected

speech. O'Bryant, 637 F.3d at 1217 (citing Mosley, 532 F.3d at 1278,

n.22).  "Any possible causal connection between the protected activity (the

grievances) and the harm (the disciplinary charges and sanctions) is

severed since the harm is not in reaction to any protected activity, but

directly due to an improper activity." O'Bryant, 637 F.3d at 1219-20.

Accordingly, the holding in O'Bryant v. Finch, is relevant and controls this

case: "If a prisoner is found guilty of an actual disciplinary infraction after

being afforded due process and there was evidence to support the

disciplinary panel's fact finding, the prisoner cannot later state a retaliation

claim against the prison employee who reported the infraction in a

disciplinary report."  637 F.3d at 1215.

In this case, Plaintiff was charged with two disciplinary reports and he was found guilty of both charges.  Plaintiff's appeals were not successful and the disciplinary reports have not been overturned.  The evidence sufficiently demonstrates that Plaintiff was provided due process, but declined to defend against the charges.  Plaintiff refused to participate, waived his right to be present at the hearing, refused staff assistance, and offered no evidence.  He was found guilty of the disciplinary report and cannot now be heard to complain that the charges were false.  As a matter of law, summary judgment should be granted in Defendant's favor concerning the issuance of the disciplinary report for participating in a disturbance.

**Recommendation**

It is respectfully **RECOMMENDED** that the motion for summary

judgment filed by Defendant Mock, ECF No. 8, be **GRANTED**, and that

Plaintiff's claims against all other named Defendants be **DISMISSED** for

failure to prosecute.

**IN CHAMBERS** at Tallahassee, Florida, on February 7, 2018.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**